All right, the next case we're going to hear today is Othi v. Holder, and Mr. I, is that correct pronunciation? Correct. Okay, we'll hear from you. Thank you. Good morning, Your Honors, and may it please the Court, Jonathan I, on behalf of the petitioner, Mr. Othi. We're here today on the issue of the abrogation of Flutie under IRIRA, and it is petitioner's position here that Flutie was not abrogated principally because at the core of Flutie the decision was a constitutional one. And if you look at the decision in Flutie, it begins with tracing the lineage of what it meant to be a permanent resident in the United States and how the status of a legal permanent resident would change in accordance with the granting of admission. But Flutie was the interpretation of a previous version of the statute. It is. Focusing on the intent language. It used that as the tool from which. That's the construction it made. Correct. It didn't say this is a constitutional right. It says it's a statutory. It's a statutory right, but at the root of the statutory right involves due process because if you look at. If you look at every statute. Of course. I would think you'd do better by arguing the statutory argument than trying to make this a constitutional case. I know why you want to make it a constitutional case, but it seems to me the question here is Flutie construed the former statute with that intent provision. With the new statute, the argument is that Flutie still applies. Correct. It wasn't overruled by the amendment. And the government says basically that the intent provision was taken out and Congress knew how to put Flutie in if they wanted it because it was in other parts of the statute. And basically you read the current statute as is without Flutie. Now that's, I believe, the two parties' positions, isn't it? Well, that's correct, Your Honor. If I may address that question for, the construction of the statute we had addressed in our brief suggests a different outcome. And I want to direct the court's attention to the issue of shall not unless. In our, what we do is we address the grammatical context and the understanding of what shall not and unless means. And we give specific examples for legal parlance which uses that same terminology. But the government posits. Well, so far, if I'm remembering correctly, when this argument has been made in the other courts of appeal, they have all concluded either A, the plain language of the statute results in an implication or there's a repeal by implication. So which of those two, I guess you have to address both of those texts as being erroneous. But so far, I don't think any court of appeals has adopted your argument. And I would agree that's the case, Your Honor. But then again, the Fourth Circuit does not. What about the agency? The agency hasn't adopted either, has it? Pardon me, Your Honor? The agency, INS, has not adopted that argument either. Don't they have the Munoz opinion? They do. They adopted the opinion that the language itself was clear under the first prong of Chevron, that the language itself abrogated, and we're submitting that the language does not. Should we defer to the agency under Chevron? Well, you should not because prong one is not satisfied because the language plain on its face does not state, nor does it reference the brief, casual, innocent departure. Well, I must say, you know, I spent a lot of time considering your argument about shall not unless. And the fact that there's a negative in there and then there's an unless, I'm not sure allows for the logical conclusion that you want. I know the normal conclusion is this is so unless. And that still leaves the possibility that there are other things. But the way this is constructed, I'm not sure it allows for your construction. But if it does, you have the agency and you have every other court that's construed against you on this. And you're advancing it again for us, hoping that we will finally bite on the bait and create a conflict, right? Well, it is the discretion of the court, Your Honor. Certainly, I would put it out there. That's our task. That's correct. But from a practical standpoint, let me address. In the record, Mr. Oti had returned to the country at one point before he actually was arrested the second time. There was a previous admission into the U.S. under the same circumstances in which he was not detained that time. He wasn't caught. He was on the list the second time. Well, he was on the list the first time, too. Did they find his name on the list and didn't question him or he just didn't notice it? The understanding was that there was no questioning whatsoever. Now, there are implications, but we have no direct evidence on the record as to why. The implication we're arguing is that because, and this goes back to the constitutional court question, because the cases that Flutie looked at in interpreting that statute involved the ongoing due process right of a permanent resident. Practically speaking, what happens here under the statute is if— You don't have a due process right any more than the statute gives you the rights. And I think it's just a terribly weak way to present your argument to say everything under the statute is due process. I mean, you're going to have to win under this statute as an interpretation of this statute. Congress can change it any time it wishes, and a court can construe it, and so can the agency. And we have a lot of rules that apply. Absolutely, Your Honor. But to try to elevate every legal process to due process as a right that's being denied you when we have to make a statutory construction doesn't help your case. And I think the issue of the English grammar and legal parlance does lend some weight because of the way that it's used commonly under writ of habeas corpus. Just because they use the same—shall not unless—just because you have the grounds of exhausting your state remedies does not mandate that the court must issue the writ of habeas corpus. Admittedly, some of the courts of appeal that have dealt with this issue have gone that far in your argument. They have not relied on plain language. Some courts of appeal have. Correct, Your Honor. But I think as one of maybe Judge Niemeyer raised earlier, if we accept the grammatical premise of your argument, then you still have to get to the other reasons those courts have used, including Chevron deference to the agency. Correct, Your Honor. And I would argue that the deference doesn't apply when the construction violates English language construction, the use of the context of shall, not, and unless. There's a common way that's understood. There's a common way that it's used in our legal system under jurisprudence. When you have that kind of violation, it creates a conflict or contradiction in how the terms are interpreted because if you think about it, and I'm not trying to get to the constitutional point. I understand where Your Honors are going. But when a person's been in the country for a long time and they leave, and the operation of statute thereby relegates them back to an arriving alien upon their return for whatever the reasons that obtain under the exceptions, there is an implication there that something really bad happened to them, meaning that he's back to the state he was when he first arrived into the country 30 years ago, which I would submit to Your Honors that his... Except for statute, the linguistic problem is not as straightforward as you say because you narrow it down to the three words. But if you take the whole clause, it says an alien lawfully admitted for permanent resident shall not be regarded as seeking an admission into the United States for purposes of immigration unless the alien has committed an offense. And it seems to me since the idea is, in other words, he's seeking admission unless the substance doesn't lend itself to the logical conclusion you reach on the normal shall not unless language. May I address that? Please. Becoming an alien seeking admission is hitting the 2-1-2 bar under the INA. You are an inadmissible alien. Now, Justice Scalia once wrote in the... I apologize, I'm drawing a blank at the moment. It was in the dissent of the Zedidus opinion in which he equated an arriving alien to be on equal footing as a criminal alien facing final order of deportation. I'd submit to you that that alien facing final removal has been afforded the full breadth of due process, substantive, procedurally, whereas the person who is arriving back with a history of being in the United States, establishing residency, having all of the liberty, interest, and the roots that he's acquired is not on equal footing as a person who is coming for the first time. But this statute clearly intends to change that argument with respect to certain people. Which I'm saying is wrong because in the first instance it says people who are beyond 180 days are arriving aliens. However, in instances in which aliens arrive on the 185th day, which they can demonstrate, for example, the reason why they left was because of a job assignment by an American company, they are permitted to return into the United States. They are not held there. There are instances in which criminal aliens who come back have an order vacating their conviction. That alien is not detained. The language suggests that there has to be something more, and what we're suggesting is the judge must be allowed the opportunity, the I.J. that is, to conduct an individual analysis as to what balancing factors should come into play as opposed to just strictly being bound to the determination, as Cuellar-Muñez is saying, which is shall not unless becomes the opposite, must be considered an arriving alien. Because what it's doing practically is reducing that person's liberty, interest, all the rights he's attained, which he's acquired since becoming a legal permanent resident, back down to the state he was when he first arrived in the United States, and that's what's practically speaking wrong with this statute. Further? Isn't that a policy argument, though, to make to Congress? I mean, this statute's been around for a little while now, and so has the administrative agency position and all the opinions of the other courts of appeal. If they were, as much as immigration is discussed, if this was so contrary to what Congress intended, wouldn't there be some indication that there would be a change in the statute to fix it? Well, if it is separation of powers, so to speak, that Your Honor is sort of getting to, meaning this should be more a legislatively addressed issue, I would disagree to the extent that the courts are empowered to make sure statutes are applied in a constitutional manner so that the outcome doesn't produce irrational results. The outcome here being produced by the statute is that people who are legal permanent residents who have crimes involving moral turpitude, any crime, and granted the conviction here is an egregious one, but it encompasses any crime involving moral turpitude in which, for example, we have a gentleman who was convicted in Virginia of a bad check, and he is under the exact same circumstances this gentleman's facing. He is inadmissible, he has no bond, and yet he's been in the country for 20 years. Isn't that a choice that an immigration Congress gets to do pretty much what it wants in setting the rules? Correct. With the limits of the judiciary's power to examine whether or not the statute itself is constitutional in how it produces its outcome. And what we're saying here is that at the core of what Flutie is talking about is the individualized analysis that they should not be handcuffed from doing, which is asking the question of what was the departure about? What are the liberty interests at stake? And why is it that this person deserves more analysis as opposed to receiving nothing? Now, I want to direct the court's attention to the final argument in which we were saying that if it is not Flutie alone that stands or the statute alone that stands that violates some measure of due process, 235B2 under the INA in conjunction with 101A13C, which mandates that anybody with an inadmissible conviction must be mandatorily detained when they work in conjunction, that would be a violation of due process because there is no opportunity to be heard on the issue of- You're being heard now. I don't understand this. But this is after the fact, Your Honor. We're being heard- That happens all the time. The idea- A post-deprivation of liberty that's heard in court isn't a violation. Correct, but we were never afforded the Flutie argument in court. We were never afforded the opportunity to present- You're afforded it right now. What's wrong with this process? But the record doesn't have the evidence showing the 16 members of the family that came in, the fact that he'd been gainfully employed all these years, the fact that he had- You have the right to present any evidence you wanted below and have it reviewed by us on appeal. That's due process, isn't it? Well, it's due process as to this process. What we're saying is how he ended up in that position was where due process was violated. It was his lawful conduct of leaving the country that triggered this statute. Mind you, he is- Let me ask you this. Your time has run out. Are you familiar with the 2012 Supreme Court decision in Vartelis? Yes, Your Honor. Well, why doesn't that absolutely dispose of your argument? Well, Vartelis does not touch on the issue of Coyarta-Muñiz. As a matter of fact, under footnotes- It doesn't touch on the issue of what? Coyarta-Muñiz, which is what we're addressing, the case that abrogated, that determined- It is the agency decision that abrogated, that determined Irira abrogated Flutie. It actually reserved on the issue. Well, I'm reading a direct quote out of that case, which means such aliens such as your client who had serious convictions on return from a sojourn abroad, however brief, may be permanently removed from the United States, citing the statute. Under 237, correct, for the deportability section. He was not removed under 237. No, it's citing 1101A13CV and also section 1182A2. Correct, but there's a footnote there, number two, that says they did not specifically rule on the issue of whether or not that was the issue being presented now, the abrogation. They accepted it as true. The court's opinion assumed that to be correct. It was not presented for the court to review in Vartelis, but Vartelis stood for a different issue. It was the arbitrary and capricious nature of distinguishing what to charge, and it was determined basically by whether they were going to be deportable under 237 or 212, which became a sport of chance. Thank you, Your Honor. I will reserve my time for rebuttal. Thank you. Mr. Boccini. Thank you, Your Honors. Walter Boccini for the Department of Justice. Your Honors, I think in this case, the statute, the way that it's framed, with the fact that it deleted the premise, the language that was interpreted in Flutie, and then set out a new definition for admitted and admission, and then with the six definitions that has the exception to this general rule for returning LPRs, creating this comprehensive framework leaves really no other conclusion. The statute was plain on its face that Flutie did not survive the O'Reilly amendments. The shall not unless constructions, while it might possibly allow for the logical possibility that there is a gap there, when it's read in context, I think it becomes clear that is not what Congress intended. And even to the extent that there is some sort of ambiguity on the statute, when we move on to step two of Chevron, the reasons provided by the board when it interpreted the statute, specifically would point to the House Judiciary Committee that went on to analyze, to discuss Flutie, also leads to the conclusion that the board's interpretation is reasonable. So I just. What's your position if we're going to affirm, is it based on the plain language of the statute, or do we have to go to Chevron deference? I think that the plain language controls just for the, because this is a comprehensive framework that was created by Congress, and that's what the Fifth Circuit and the First Circuit found. The framework doesn't really leave any more room for another exception or for an alternate interpretation for the general rule. It really does occupy the entire space. And the fact that it completely deleted the language that was interpreted in Flutie doesn't allow for the conclusion that the Flutie doctrine somehow survives, that a Flutie consideration somehow survives for those fitting into the six exceptions. So I think that the plain meaning does, is the proper way to go. But, I mean, if for some reason there is some sort of ambiguity on the Shell-Lada-Less construction, you move on to step two of Chevron, and then you agree with the Third and the Ninth Circuits that have gone that way and found that the statute's interpretation is reasonable. So either way, I think the court comes to the conclusion that a matter of collateral controls in this case, and that this petitioner was properly treated as a lawful permanent resident seeking admission into this country. With respect to the due process arguments, I don't have much to say about that other than, I would point out that the Plasencia case for the Supreme Court, I think it's pretty much analogous to the situation here. In that case, the alien tried to enter the country and smuggled some other aliens, and she was placed in exclusion proceedings for that purpose. Now, exclusion proceedings, obviously, is under the previous regime. But her argument was that the issue of her excludability should be determined in deportation proceedings. And the Supreme Court disagreed with that, said, no, it's the Congress' authority to require you to litigate that issue in exclusion proceedings. So in some ways, it's what he's arguing now. He's saying that the issue of it should be treated as the portable alien. But as your honors have pointed out, it is within the plenary power of Congress over immigration matters to determine how an alien should be treated upon entry or whether she should remain in this country. And it has done so in 1101A13C. Is that it? That's it, your honor. Okay. Mr. High? Thank you. Just briefly, your honor. It is not the case that I'm saying he should be afforded 237. What it is the case I'm arguing is that the operation of this statute and then Callardo-Muñez's interpretation of it is not reasonable because, first, the plain language under Chevron doesn't say it was abrogated. It's not even clear. There's an ambiguity at best. And the Supreme Court has already noted that ambiguity should be construed in favor of the aliens because of underlying due process concerns. In this instance, the statute itself is a trick because we've had cases in which aliens, resident aliens, have left the United States beyond 180. It's a trick? It's a trick. I just didn't understand what you said. It's a trick to capture deportable aliens that have not been, let's say, caught up with just for argument purposes because we've seen instances in which residents have come back beyond 180 days, unaware of the bar under 101A13C, but then they've been admitted because there was an analysis, at least done at the border, recognizing that, okay, this person's been filing taxes for the last 10 years, he has family here, and he was assigned on a job. He was, therefore, allowed to return back into the country, which implicates what we were talking about, that the shall not unless construction requires more than just what the government is saying in Cariardo. And then you take the sixth exception, and that type of argument doesn't really work. Well, the sixth exception can work if you have a quorum nobis in hand. But that's my point. I mean, in this instance, counsel in Chicago is working on trying to vacate the conviction. It's trying to ameliorate it. But notwithstanding that, it's still the... What's the basis for the vacating the conviction? Mr. Ohti had an alibi statement and an alibi witness on the day of the arrest. They never contacted that witness. They claimed that there was video. He was never produced a video showing that he was there. He's always maintained he was not involved in this. But nonetheless, his sum total of 15 minutes with his counsel resulted in him being told that it was better just to plead guilty. So there was an issue with regards to that alibi witness who was identified to the state's attorney. He signed a statement, but no one actually conducted an investigation on it. Notwithstanding the fact... I thought he said he just kicked, and somebody else, the person who killed the person, the stabbed the person, was someone else, and he really wasn't. No, there's a statement in there, in the record, that shows that he was not there. You can't collaterally attack his prior convictions. Right, we're not here to do that, and I recognize that, Your Honor. Okay. Thank you. Thank you, Mr. Ohti. We'll come down and greet counsel and take a short recess. This honorable court will take a brief recess.
judges: Paul V. Niemeyer, G. Steven Agee, Clyde H. Hamilton